OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4441
Re: The liability of trucking concerns, engaging in either intrastate or interstate business or both, who are required under the provisions of Articles 911a and 911b of Vernon's Civil Statutes of Texas to obtain permission from the Railroad Commission to engage in such enterprise but who have not obtained such permission, for an intangible tax under the provisions of Article 7105 of Vernon's Civil Statutes of Texas, as amended.

We have received and considered your request for an opinion. We quote from your request:

"It has been reported to me that a high percentage of trucking concerns are operating in this State without a Certificate of Necessity and Convenience either from the Railroad Commission of Texas or the Interstate Commerce Commission. Many of the authorized operators are complaining that their Certificates are worthless by reason of the fact these unauthorized and unregulated carriers can cut under them and take their business away from them.

* * *

"In view of the wording of the statute as underscored above, can the State Tax Board require a report and place an intangible value on these unauthorized dealers? They do not own a Certificate of Necessity and Convenience or any kind of franchise that is taxable, yet there might be some discrimination in placing an intangible value on the certificate of the authorized dealers and not requiring the unauthorized dealers to pay this tax."

Article 7105 of Vernon's Civil Statutes of Texas as amended by Article 13 of House Bill 8, Acts 47th Legislature, Regular Session, provides:

" * * * each 'motor bus company,' as defined in Chapter 270, Acts, Regular Session of the Fortieth Legislature, as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chapter 78, and each 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, doing business wholly or in part within this State, whether incorporated under the laws of this State, or of any other State, territory, or foreign country, and every other individual, company, corporation, or association doing business of the same character in this State, in addition to the ad valorem taxes on tangible properties which are or may be imposed upon them respectively, by law, shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on; * * * "

Article 7106 of Vernon's Civil Statutes of Texas provides:

"Between the second day of January and the first day of March of each year, every individual, company, corporation and association embraced within the provisions of the next preceding article of this chapter, or coming within its scope and intent, shall make out and deliver into the possession of said tax commissioner a statement containing the information required of it by this chapter, which statement shall be duly verified by the affidavit of the individual, or one of the officers of the company, corporation or association in whose behalf it is made, or by the receiver, assignee, or trustee in bankruptcy thereof."

It is clear from your statement that the trucking concerns referred to by you do not have certificates nor authority from the Railroad Commission of Texas to engage in the enterprise and business which they are conducting. We presume, however, from the statements in your request, that such concerns are actually engaged either wholly or in part in business of the same character

which would require such trucking concerns to obtain certificates or proper authority from the Railroad Commission in order to entitle them to operate lawfully in this state. Obviously then they have not obtained certificates as required and provided by Articles 911-a and 911-b of Vernon's Civil Statutes of Texas, as amended:

Article 911-a, Section C, provides:

"The term 'Motor Bus Company' when used in this Act (Article 911a; P.C. 1690a) means every corporation or persons as herein defined, their lessees, trustees, receivers, or trustees appointed by any court whatsoever, owning, controlling, operating, or managing any motor propelled passenger vehicle, not usually operated on or over rails, and engaged in the business of transporting persons for compensation or hire over the public highways within the State of Texas, whether operating over fixed routes or fixed schedules, or otherwise; provided further, that the term 'Motor Bus Company' as used in this Act (Art. 911a; P. C. 1690a) shall not include corporations or persons, their lessees, trustees, or receivers, or trustees appointed by any court whatsoever, insofar as they own, control, operate, or manage motor propelled passenger vehicles operated wholly within the limits of any incorporated town or city and the suburbs thereof whether separately incorporated or otherwise."

Section 2 of said Article 911-a provides:

"All motor-bus companies, as defined herein, are hereby declared to be 'common carriers' and subject to regulation by the State of Texas, and shall not operate any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation or hire over any public highway in this State except in accordance with the provision of this Act (Art. 911a; P.C. Art. 1690a), provided, however, that nothing in this Act (Art. 911a; P. C. Art. 1690a) or any provision thereof shall be construed or held to in any manner affect, limit, or deprive cities and towns from exercising any of the powers granted them by Chapter 147, pages 307 to 318 inclusive, of the General Laws of the State of Texas, passed by the Thirty-third Legislature, or any amendments thereto."

Section 3 of the same statute provides for the issuane of certificates of convenience and necessity, in proper instances by the Railroad Commission of the State of Texas.

Article 1690-a, of Vernon's Penal Code of the State of Texas, makes it a penal offense to operate a "motor bus company" in violation of the applicable laws of this state.

Article 911-b, Section (g), of Vernon's Civil Statutes of Texas, defines the term "motor carrier" as follows:

"The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever, owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this state, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns."

Sections 2 and 3 of said Article 911-b make it unlawful to operate a "motor carrier" without first having obtained a certificate of convenience and necessity from the Railroad Commission. Article 1690-b, of Vernon's Penal Code of the State of Texas, is the applicable penal statute pertaining thereto.

We have not found the words "common carrier motor carrier," as used in Article 7105, supra, specifically defined in the carrier statutes referred to above. However, from the expressions used in the case of Central Freight Lines, Inc. et al vs. Sadler, et al, 147 S. W. (2d) 1102, error dismissed, judgment correct, and from a consideration of said Article 911-b, we think the Legislature evidently intended that provisions of Article 7105 to be specifically applicable to "motor carriers" as defined in said Article 911-b.

The Legislature must have had some purpose in mind when it enacted the sentence in Article 7105 that "every other individual, company, corporation or association doing business of the same character in this state, in addition to the ad valorem taxes on tangible properties * * * shall pay an annual tax to the state * * * on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on * * * ."

Honorable George H. Sheppard, Page 5

We think that the Legislature clearly meant to include, within the meaning of the sentence just quoted from Article 7105, any individual or concern "doing business of a similar character" to a "motor bus company" or a "motor carrier." The fact that the individual or concern has not complied with the laws of this state does not weaken the strength of our conclusions. Rather it strengthens it. The Legislature cannot be presumed, in the absence of compelling words clearly showing a contrary intention, to have intended an absurd, or unjust or unfair result of the application of the intangible tax law so as to result in pecuniary advantage or favor to those who willfully or inadvertently disregard the laws of this state. 39 Tex. Jur. p. 246. We think the statute permits no such interpretation.

It was held in the case of Thompson vs. McDonald, 59 S. Ct. 64, 305 U. S. 263, 83 L. Ed. 164, that the Interstate Commerce Commission has jurisdiction of commercial consideration appertaining to interstate truck business on highways under the Federal Motor Carrier Act, 49 U. S. C. A., Sec. 301, et seq. but that the preservation and safety of highways themselves is within the jurisdiction of the State Commission and that the Texas Railroad Commission's orders, refusing interstate contract motor carrier's permission to use state highways, are inoperative only when it undertakes to exercise control over interstate commerce itself rather than the safety of a highway and the traveling public. The Federal Motor Carrier Act, Title 49, Section 302, U. S. C. A., provides:

"The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce. * * * "

Thus it appears that the holding in Thompson vs. McDonald, supra, would be equally applicable to a "motor bus company" as contemplated in Article 911-a, supra.

It has been held in Tips vs. Railroad Commission of Texas (Civ. App.) 110 S. W. (2d) 585, that where a motor carrier is engaged in both interstate and intrastate commerce, the Federal Interstate Commerce Commission and the State Commission in which it operates, may each require of it a certificate or permit to engage as such motor carrier.

It is, therefore, apparent that either a "motor bus company" or a "common carrier motor carrier," as contemplated within the statutes heretofore referred to, and engaged in interstate commerce must obtain a permit or license or certificate from the

Railroad Commission before using the highways of this state in such interstate business. Failure to do so would render such individual or concern liable for a violation of the applicable Texas laws.

Since the tax levied by said Article 7105, supra, is an ad valorem tax, we think there could be no distinction between those individuals or concerns, referred to in your request, insofar as they might come within Article 7105, supra, whether they be engaged in interstate commerce or engaged in purely intrastate commerce or both.

You are, therefore, respectfully advised that it is our opinion that individuals or concerns, such as are referred to in your request, whether engaged in intrastate business or interstate business or both, and who do not have such authority or permission from the Railroad Commission of Texas as may be required by Articles 911-a and 911-b, supra, for either a "motor bus company" or a "common carrier motor carrier," as the facts in each case would require, but who are doing business of the same character as those individuals or concerns, come within the provisions of Article 7105, supra. It follows, therefore, that they are required by statute (Chapter 4 of Title 122, Revised Civil Statutes of Texas, 1925), to file a report in the manner therein provided.

We trust that in this manner we have fully answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Harold McCracken

Harold McCracken
Assistant

HM:ej